IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID C. LEE                                                                                      PLAINTIFF

vs.                                        CIVIL NO. 04-2136

MICHAEL J. ASTRUE[1], COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                        DEFENDANT

## MEMORANDUM OPINION

David Lee ("plaintiff") brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Act.

**Background:**

The applications for DIB now before this court were filed on December 20, 1993, and June 25, 2002, alleging an onset date of June 9, 1992, due to a neck injury, back injury, and manic depression. (Tr. 924). A partially favorable decision was rendered on the first application on June 29, 1995, granting plaintiff a closed period of disability from June 9, 1992, to September 30, 1993. (Tr. 923, 15-20). This decision became final when the Appeals Council denied review on July 24, 1996. Subsequently, plaintiff appealed that decision to the United States District Court for the Central District of California, Western Division. Pursuant to the District Court's remand order,[2] a

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The District Court determined that the ALJ had failed to include plaintiff's non-exertional limitations, specifically his inability to perform repetitive neck movement, in the hypothetical question posed to the vocational expert. (Tr. 539).

AO72A
(Rev. 8/82)

supplemental hearing was held, resulting in a second unfavorable decision on March 10, 1998. (Tr. 405-421, 536-541). The case was again appealed to the United States District Court for the Central District of California and remanded back to the agency on October 1, 1999.[3] (Tr. 1025-1030). However, no forwarding order was entered by the Appeals Council and the case remained inactive until May 21, 2004, at which time it was remanded to the ALJ. (Tr. 924).

Plaintiff's second application for DIB was filed on June 25, 2002. (Tr. 923). On September 22, 2003, an Administrative Law Judge rendered an unfavorable decision. (Tr. 923, 1060-1068). Plaintiff appealed that decision to this court. Because the claim file and tape recording of the hearing held on July 25, 2003, could not be located, this court remanded the case to the agency pursuant to sentence six on September 2, 2004. (Doc. # 4). A second administrative hearing was held on October 4, 2005. (Tr. 936-973). Plaintiff was present and represented by counsel.

At the time of the administrative hearing on October 4, 2005, plaintiff was fifty-six years old and possessed a high school education. (Tr. 924). The record reveals that he had past relevant work ("PRW") experience as an automobile heat/air conditioning installer and a heating/air conditioning technician. (Tr. 924).

The Administrative Law Judge ("ALJ") consolidated both cases and rendered an unfavorable decision on December 22, 2005. (Tr. 923-933). He concluded that plaintiff was insured for benefits through December 31, 1999. (Tr. 931). As such, the ALJ determined that the relevant time period in this case began on October 1, 1993, the day after plaintiff's previously granted period of disability

---

[3]The District Court found that the ALJ had relied on the testimony of a vocational expert that contradicted the Dictionary of Occupational Titles. (Tr. 1027).

expired, and concluded on December 31, 1999, his date last insured. (Tr. 924). After assessing plaintiff's impairments, the ALJ found that these impairments were severe but did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 931). The ALJ then determined that plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light work requiring only occasional stooping, crouching, kneeling, crawling, climbing stairs, and overhead work. However, he concluded that plaintiff could not perform any activities involving the use of ropes, ladders, or scaffolds. From a mental standpoint, the ALJ also found that plaintiff could understand, remember, and carry out simple job instructions but experienced difficulty when dealing with detailed instructions, attempting to maintain concentration, and dealing appropriately with the general public. As such, he found plaintiff capable of performing work only where the interpersonal contact required for the tasks was no more than incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables, the tasks require little judgment, and the supervision required is simple, direct, and concrete. With the assistance of a vocational expert, the ALJ concluded that plaintiff could perform the positions of assembler, machine tender, and poultry worker. (Tr. 931).

On August 10, 2005, the Appeals Council declined to review this decision. (Tr. 3-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Although both parties were afforded the opportunity to file appeal briefs, both have chosen not to do so. This case is now ready for decision.

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his

disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain

are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The record reveals that plaintiff has a history of chronic lower back pain, cervical injury, and depression. (Tr. 275). In 1989, plaintiff underwent anterior cervical interbody disc removal and fusion with bone back graft at the C6-C7 level due to cervical spondylosis. (Tr. 366-367).

In September 1991, plaintiff was reportedly injured when a roof hatch fell on his head. (Tr. 281). He underwent an unsuccessful operation on his neck in 1991. (Tr. 294, 805-819). Then, in June 1992, plaintiff underwent cervical fusion surgery at the C4-5 and C5-6 levels. (Tr. 278, 368-370, 791-804). However, he continued to experience lower back pain that radiated into his left leg. (Tr. 294, 783-790). An MRI of plaintiff's lumbar spine revealed a displaced disc at the L5-S1 level centrally and to the left of the midline with impingement of the left S1 nerve root, a mild bulge at the L4-5, and posterior facet degenerative changes from the L3 though the S1 levels. (Tr. 289-290). For this, plaintiff was prescribed Darvocet. (Tr. 294).

In November 1992, Dr. Melvin Cheatham opined that plaintiff had reached a permanent and stationary level for rating purposes and had a permanent partial disability precluding heavy work or work requiring excessive neck motion. (Tr. 783). He did not feel that plaintiff could return to his

AO72A
(Rev. 8/82)

previous work as an air conditioning and heating repairman but did feel that he was ready to start a rehabilitation program. (Tr. 783).

On February 17, 1993, a CT scan of plaintiff's lumbosacral spine revealed a moderate disc bulge at the L5-S1 level to the left of the midline. (Tr. 780). It was noted that this probably involved herniation and compression on the left S1 root sheath. As such, Dr. C. Huen suspected a disc bulge with left-sided herniation at the L5-S1 level impinging on the S1 root sheath. (Tr. 780). A CT scan of plaintiff's cervical spine revealed no significant findings, aside from some minor degenerative changes. (Tr. 781).

On March 9, 1993, plaintiff underwent a microdiscectomy on the left side at the L5-S1 level. (Tr. 299-303). Records reveal that the procedure was uneventful and plaintiff was released home on the third postoperative morning. (Tr. 299).

On July 8, 1993, an MRI of plaintiff's cervical spine revealed status post cervical fusion from the lower C4 and upper C7 levels with secondary reversal of the normal cervical lordosis maximal at the C5-C6 levels. (Tr. 315-316). An MRI of his lumbar spine showed L5-S1 level degenerative disk changes with a 2 millimeter central disk bulge encroaching in the epidural fat and minimally on the thecal sac. (Tr. 342-343).

On October 1, 1993, Dr. Moustapha Abou-Samra, plaintiff's treating neurosurgeon, evaluated plaintiff. (Tr. 312-313). He noted that plaintiff continued to have symptoms in his upper left extremity, left lower extremity, back, and neck. Plaintiff was also reportedly having problems with starring episodes and forgetfulness. A physical exam showed no obvious objective findings of

significance. He had a very normal ankle reflex on the left which would be affected with a disc herniation at the L5-S1 level, an essentially negative straight leg raise, excellent strength in all muscle groups, and symmetrical reflexes. Dr. Abou-Samra felt that plaintiff had reached "a permanent and stationary condition." (Tr. 313). Based on the fact that plaintiff had undergone surgery on both his cervical and lumbar spine and continued to experience symptoms, he concluded that plaintiff could not perform excessively heavy work and should not lift "in a repetitive fashion anything in excess of 15 lbs." Further, Dr. Abou-Samra stated that plaintiff should not perform activities requiring sudden or repetitive neck movements, bending, stooping, pushing, or pulling. As such, he opined that plaintiff could essentially perform sedentary work. Plaintiff was then referred for pain management. (Tr. 313).

On December 23, 1993, Laura Kistner completed a vocational evaluation report. (Tr. 371-393). Plaintiff had participated in a six day evaluation. He performed best when performing activities allowing him to sit in a padded, high back, stenographer's chair. Testing revealed that plaintiff was suitable for employment as an electronics technician (sedentary bench work only), dispensing optician, graphic arts technician, and lay out and paste up person.

Plaintiff was able to sit for 120 minutes at a time, stand for 45 minutes, bend forward at the waist approximately 20 degrees while working in a seated position, bend less than 20 degrees while standing, lift and carry a maximum of 15 pounds, flex his neck 15 to 20 degrees, support waist level reaching for up to 120 minutes at a time, intermittently reach at chest level for up to 45 minutes, walk for 28 minutes, and drive for 30 minutes. (Tr. 380-381). He also demonstrated the ability to

follow both simple and complex verbal and written instructions, as well as exhibited abstract learning abilities in the average range. (Tr. 391). Plaintiff's work pace was average and he was very accurate, performing tasks correctly on most occasions. (Tr. 391).

On March 16, 1994, plaintiff was evaluated by Dr. Craig Davis, a consultative orthopaedic surgeon. (Tr. 321-326). Plaintiff complained of neck pain radiating down his left arm and lower back pain radiating into his left leg. An examination revealed a decreased range of motion in plaintiff 's neck and back with a normal range of motion in his extremities. (Tr. 323). There was also minimal spasm and tenderness on the midline of the paravertebral musculature with no evidence of scoliosis. Plaintiff's straight-leg raise test was negative while seated and supine. His Lasegue sign and sciatic stretch signs were also negative. Dr. Davis concluded that plaintiff had continued cervical and lumbar pain with radicular symptoms, as well as a deficit in the heel-jerk on the left lower extremity. As such, he determined that plaintiff could stand and walk for 6 hours with regular breaks and lift 25 pounds occasionally. Dr. Davis then completed a medical source statement indicating that plaintiff could perform light work (i.e., lift 10 pounds frequently and 20 pounds occasionally, as well as sit, stand, and walk for 6 hours). (Tr. 327). Further, he indicated that plaintiff had restrictions regarding climbing, stooping, crouching, crawling, and pulling. (Tr. 328).

On October 3, 1994, Dr. Michael Callaway completed a physical RFC assessment. (Tr. 1021). He indicated that plaintiff could occasionally lift up to 10 pounds, carry up to 10 pounds, bend (only at the knees), and squat and never lift or carry more that 10 pounds. Further, he concluded that plaintiff could not use his hands or feet for repetitive movements. (Tr. 1021).

9

On June 22, 1995, plaintiff had no real straight leg raise, flexion and extension strength were within normal limits, reflexes were within normal limits, he could toe and heel walk and bend over and touch his toes without abnormalities, and he had some palpable tenderness in the lumbar area. (Tr. 906). X-rays of plaintiff's lumbar spine revealed mild disc space narrowing at the L5-S1 level with minimal spurs and a minimal levoconvex curvature of the lumbar spine. (Tr. 907). Dr. Callaway diagnosed plaintiff with osteoporosis and prescribed Darvocet and Anaprox. (Tr. 907).

On September 20, 1995, Dr. Callaway indicated that there was not a lot he could do for plaintiff aside from treating his underlying osteoporosis. (Tr. 905). He noted that plaintiff probably had microfractures in the trabeculae, resulting in his lower back pain. As such, Dr. Callaway encouraged plaintiff to be compliant with the Fosamax, which would reduce his level of osteoporosis and decrease his pain. Records also indicate that plaintiff was taking Ultram, Darvocet, and Anaprox. (Tr. 905).

On March 8, 1996, an MRI of plaintiff's lumbar spine revealed a lateral disc bulge at the L5-S1 which could involve the inferior aspect of the left neural foramen, postoperative fibrotic change of the surrounding nerve root sleeve on the left at the L5-S1 level, and evidence of postoperative laminectomy at the L5-S1. (Tr. 847, 902).

We note that various treating physicians have indicated that plaintiff can lift no more than 15 pounds and cannot perform work requiring repetitive neck movement. *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is generally entitled to substantial weight). Only one examining, non-treating, physician concluded

that plaintiff could lift 25 pounds occasionally. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). In spite of this, the ALJ concluded that plaintiff retained the RFC to perform a wide range of light work (i.e., lifting and carrying 10 pounds frequently and 20 pounds occasionally) requiring only occasional stooping, crouching, kneeling, crawling, climbing stairs, and overhead work. He also concluded that plaintiff could not perform any activities involving the use of ropes, ladders, or scaffolds. The ALJ, however, made no mention of the 15 pound weight limit imposed by plaintiff's doctors or the limitations regarding neck movement. *See* 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96-2p; *Prosch v. Apfel,* 201 F.3d at 1010, 1012-13 (8th Cir. 2000) (holding that whether the ALJ grants a treating physician's opinion substantial or little weight, the ALJ must "always give good reasons" for the particular weight given to a treating physician's evaluation). As these limitations are supported by the objective evidence of record, we do not find substantial evidence to support the ALJ's RFC determination. Accordingly, remand is necessary to allow the ALJ to reconsider the evidence concerning plaintiff's RFC.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

11

AO72A
(Rev. 8/82)

DATED <u>13th</u> this day of April 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE